SAMUEL E. PINGREE, ADMINISTRATOR OF JEDEDIAH N. TILDEN, *v.* OLIVE GOODRICH.

*Statute. Husband and Wife. Divorce. Administrator. Probate Court.*

It is only where a decree of nullity by the supreme court is necessary to secure the proper descent or distribution of the estate, that a petition for that purpose after the death of one of the parties to the marriage, would seem to be necessary or proper.

A petition to annul a marriage, can not be sustained after the death of one of the parties to the marriage, where the cause alleged renders the marriage null and void from the beginning, without any such proceeding.

In no instance does the statute give any right to the administrator to bring a petition to annul a marriage. He is not the representative of the deceased for any such purpose. Only *relatives* of the deceased, interested in contesting the validity of the marriage, are authorized by statute to petition that it may be annulled.

PETITION for annulling the marriage of Jedediah N. Tilden, deceased, to Olive Goodrich, made by the administrator of the deceased, and entered in the supreme court for Windsor county, at the February term, 1868.

The ground upon which the decree was prayed for, is stated in the opinion of the court, which was delivered by

PECK, J. This petition is brought by the administrator to annul the marriage of the intestate with Olive Goodrich. It is alleged, that the marriage took place at Hartford in this state; and the ground of the petition is that at the time of the marriage

the said Olive had a husband living, one George B. Goodrich, to whom she had been duly married in New Hampshire, and that the said George B. and Olive are still living, and that the said Olive claims to be the widow of the intestate.

An important question arises upon the face of the petition, whether an administrator can maintain such petition. There is no necessity of such petition by the administrator for the purpose of his personal protection. It is urged by the administrator, that it is important to him to know, by an adjudication of this court, whether the said Olive is the widow of the intestate, before he distributes the funds of the estate, in order to protect himself from future liability for paying to her a widow's share in the estate. But whatever he may pay to her as such widow, will be paid under an order or decree of the probate court, and that decree will be a protection to him. Whatever right, therefore, the administrator has, if any, to prosecute this petition, grows out of his representative character in the protection of the proprietary rights of those interested in the estate which he represents. But there is no necessity of a decree of nullity of this marriage in order to protect the rights of those who have the ultimate interest in the estate. If Olive Goodrich had a former husband still living at the time of her marriage with the intestate, this latter marriage was absolutely void without a decree of nullity by this court; and the probate court, in the distribution of the estate, has a right incidentally to hear and so decide, and exclude this pretended widow on this ground. If the marriage were merely voidable by a direct decree of nullity, it would be otherwise. So far as the future *status* of the parties is concerned, the death of one of the parties to the marriage, has accomplished all that could be effected by a decree of nullity by this court. It is only where a decree of nullity by the supreme court, is necessary in order to the proper descent or distribution of the estate, that a petition for that purpose after the death of one of the parties to the marriage, would seem to be necessary or proper. This petition, therefore, can not be entertained, unless it is clearly authorized by the statute. The provisions of the statute seem to be in harmony with the views already expressed. Section 4 of chapter 69 of the General Stat-

utes, provides that " All marriages contracted whilst either of the parties has a former wife or husband living, shall be void, unless the former marriage shall have been dissolved."

A further provision on this subject shows that the word *void* does not mean voidable merely, as it is sometimes construed in statutes. Section 1 of the same chapter prohibits certain marriages ; and section 1 of chapter 70 provides that all marriages which are prohibited by law, on account of consanguinity or affinity between the parties, " or on account of either of them having a former wife or husband then living, shall, if solemnized within this state, be absolutely void *without any decree of divorce or other legal process.*" It is true, section 2 of the same chapter provides that, " when a marriage is supposed to be void, or the validity thereof is doubted, for any of the causes mentioned in the preceding section of this chapter, either party may file a libel for annulling the same." The reason of this provision is that, while the parties are both living, and the marriage apparently in force, it may be important to have the *status* of the parties determined by an adjudication, rather than that they should be left to act in doubt as to the validity of their marriage. But when the marriage relation is terminated by the death of one of the parties, this reason ceases. Hence, no provision is made for a decree of nullity for any of the causes mentioned in this section, after the death of either party ; and it is apparent that no such petition was in ended to be authorized, for, the marriage being expressly made void without any decree of nullity, no such proceeding is needed after the death of one of the parties. This is apparent also from the fact that, in the sections in the same chapter authorizing the court to declare void marriages where one of the parties was an idiot or a lunatic, and where the consent of one of the parties was obtained by force or fraud, it is expressly provided, with certain limitations, that the proceeding for that purpose may be instituted after the death of one of the parties, if the other party is living. The reason of this distinction is that, in case of these three causes last mentioned, the marriage, not being declared void by the statute, remains in force till set aside by a direct decree for that purpose. If we are right in this conclusion, a petition to

4

annul a marriage can not be sustained after the death of one of the parties to the marriage, where the cause alleged renders the marriage null and void from the beginning, without any such proceeding. But if such petition can be sustained in such case after the death of one of the parties to the marriage, it should not be in the name of the administrator; for in no instance does the statute give any right to the administrator to bring a petition to annul a marriage. In all the cases in which the statute authorizes such petition on the side of the deceased party to the marriage, it is provided it shall be on the application of some *relative* of the deceased, interested to avoid the marriage or contest its validity. The administrator is not the representative of the deceased for any such purpose. It is very properly left to the children or relatives, to decide whether they will enter upon the delicate task of contesting the validity of the marriage of their parent or kindred. They may prefer to forego a pecuniary advantage rather than do so.

Petition dismissed.